TERRITORY OF HAWAII, BY C. S. HOLLOWAY,
SUPERINTENDENT OF PUBLIC WORKS, *v.* E. J.
COTTON, C. E. COTTON AND JAMES B. AGASSIZ,
PARTNERS UNDER THE NAME OF COTTON
BROS. & CO.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 27, 1906.          DECIDED MARCH 8, 1906.

FREAR, C.J., WILDER, J., AND CIRCUIT JUDGE DE BOLT
IN PLACE OF HARTWELL, J.

ORDER FOR NEW TRIAL—*when and when not interlocutory for purposes of writ of error.*

An order granting a new trial is usually interlocutory and not reviewable on error, whatever may be the rule on exceptions, until after the new trial has been had and final judgment entered; but if there was no jurisdiction to make the order, it is final in its nature and may be brought up immediately on error.

BOND ON NEW TRIAL—*must be filed within* 10 *days after verdict, though judgment not entered.*

Under R. L., Sec. 1805, on a motion for a new trial, the bond for costs and against disposition of property to plaintiff's detriment, as well as the motion itself, should be filed within ten days after verdict, whether judgment has been entered or not.

ID.—*may be waived, how.*

The filing of such bond within the time prescribed by the statute may be waived, either expressly or by implication, but the mere fact that plaintiff's counsel did not raise the objection that no bond had been filed on the seventh day after verdict when defendants' counsel intended to present the motion according to notice given by him, but instead sent word to the court that he was not ready, and desired a postponement, being then otherwise engaged, would not constitute a waiver or prevent his raising the objection

on the eleventh day after verdict, which was the day to which the postponement was made on the seventh.

### OPINION OF THE COURT BY FREAR, C.J.

On May 27, 1904, at the April term of the circuit court of the first circuit, the plaintiff obtained a verdict for $25,000 damages for the loss of its dredger through the alleged negligence of the defendants. On May 31 the defendants moved for a new trial and gave notice that the motion would be presented for argument on June 3 or as soon thereafter as counsel could be heard. Accrued costs were paid and a deposit made for the costs of the motion, but no bond was filed conditioned for the payment of the costs of the motion and that the defendants would not to the detriment of the plaintiff remove or otherwise dispose of any property they might have liable to execution on the judgment, as required by Sec. 1805 of the Revised Laws. On the day noticed for the presentation of the motion, June 3, defendants' counsel appeared but plaintiff's counsel sent word to the court that he was not ready, being otherwise engaged, whereupon a postponement was ordered at his request until June 7, when he moved that defendants' motion be dismissed for failure to file a bond as above mentioned, having given no intimation previously of his intention to so move. The facts as to what plaintiff's counsel did on June 3 appear only by an affidavit made by defendants' counsel and filed in the circuit court on June 7 in support of a motion that "time for perfecting motion for new trial by filing bond as required by statute be extended forty-eight hours from date." The affidavit and motion were made and filed after argument had been made on the same day by counsel on both sides upon plaintiff's motion to dismiss the motion for a new trial because of failure to file the bond required, and after defendants' counsel had asked orally for twenty-four hours in which to file the bond after entry of judgment, no formal judgment having been entered previously. The court, Judge Gear sitting, had taken the question of dismissing the motion for a new trial under advisement until 1:30 p. m., but at 12 m., upon defendants' counsel pre-

senting the motion and affidavit above referred to, ordered the clerk to enter judgment and held that the bond required by the statute could not be filed until the judgment was entered, and therefore granted defendants' motion for two days' time in which to file the bond, to which ruling plaintiff excepted. It seems that two formal judgments were entered, one on June 7, "as of April term, 1904," by one clerk; the other on June 8 "as of the 27th day of May, 1904," by another clerk. The bond was presented and approved June 7 and filed the next day, and on June 7 defendants' counsel gave notice that the motion for a new trial filed May 31 would be presented for argument on June 14 or as soon thereafter as counsel could be heard. The matter was continued on the 14th to the 17th, when the plaintiff renewed its objection to the hearing of the motion for a new trial on the ground that the movant had not complied with the statutory requirements. The objection was overruled and argument was heard on the motion for a new trial. Before deciding the motion Judge Gear went to California, but defendants contend that his absence from the Territory does not appear from the record and cannot be noticed judicially.

On February 27, 1905, the clerk received and filed a cablegram dated San Francisco, Cal., February 27, 1905, as follows: "In Territory v. Cotton order motion for new trial granted. Grounds mailed. Gear, judge." On March 4, 1905, the clerk received by mail and filed an opinion ordering a new trial signed by "Gear, judge;" also a letter dated San Francisco, Cal., Feb. 25th, 1905, from "Geo. D. Gear," stating that he had been kept "here" by sickness and that he sent 2 memoranda for the clerk to file and hoped they would get "there" in time, one of the memoranda apparently being the opinion just mentioned. Judge Gear's term of office was for four years from March 2, 1901, and therefore expired at midnight March 2, 1905, if not at midnight the preceding day. On April 14, 1905, defendants moved the court, Judge Lindsay, who was Judge Gear's successor, sitting, that a formal order be entered granting a new trial, which motion was granted July 17, 1905, the formal order being entered the next day, to which the

plaintiff excepted.  On January 17, 1906, the plaintiff sued out this writ of error to reverse the order of Judge Lindsay granting a new trial.  The defendants now move to quash or dismiss the writ, mainly on the ground that a writ of error does not lie to an order granting a new trial, contending that such an order is not a final judgment, but an interlocutory ruling only.  The question is whether the writ should be quashed or dismissed on this ground.

Some courts hold that a ruling on a motion for a new trial, whether granting or refusing a new trial, is discretionary with the trial judge and cannot be reviewed by the appellate court on appeal, error or exceptions, whether before or after a new trial has been had, if one has been ordered, unless at least the ruling was based on matters occurring or discovered after the first trial and in regard to which therefore no exceptions could have been taken before verdict or judgment.  Other courts, while holding that such a ruling is not so far discretionary as to pre- clude review within certain limits, hold nevertheless that it is interlocutory and cannot be reviewed before a new trial has been had, if one has been ordered, and, indeed, cannot ordinarily be made the direct subject of appeal, error or exceptions, but can be reviewed only upon a review of the final judgment in the case.  See, in general, *Wheeler v. U. S.,* 159 U. S. 523; *Baker v. White,* 92 U. S. 176; *Waterhouse v. Rock I. A. M. Co.,* 97 Fed. 466; *Young v. Shallenberger,* 53 Oh. St. 291; *People v. Judge,* 41 Mich. 5; *Williams v. La Valle,* 64 Ill. 110; *Magill v. Lyman,* 6 Conn. 59; *Johnson v. Parrotte,* 46 Neb. 51; *White v. Pease,* 15 Utah 170; *Commonwealth v. Morrison,* 134 Mass. 189; *Samuel v. Judin,* 6 East 333.

It is contended by the defendants that in this jurisdiction an order granting a new trial, whatever may be the rule with respect to an order refusing a new trial (see *Harrison v. Magoon,* 16 Haw. 170, 332), is interlocutory, and, on the anal- ogy of decisions in cases brought up on exceptions to other inter- locutory rulings, cannot be reviewed on error before final judg- ment in the case.  The interlocutory rulings referred to, which it has been held cannot be reviewed on exceptions before final

judgment, were orders overruling demurrers, pleas of former conviction and the like. See *Barthrop v. Kona Coffee Co.,* 10 Haw. 398, and cases there cited; also *Territory v. Ah Quong,* 14 Haw. 108. It has not been held that an order granting a new trial cannot be brought up immediately on exceptions, although in *Ahmi v. Cornwell,* 14 Haw. 301, where such a contention was made on the ground that the order was interlocutory, the court based its opinion, that the exception could be entertained, upon the ground, not that the order granting a new trial was not interlocutory or that if it was it could be reviewed immediately, but that the exceptions had been certified up by the trial court under an express statutory provision permitting it in its discretion to certify exceptions to interlocutory rulings. In other cases, however, in which objection was made to entertaining exceptions to orders refusing new trials, based on the ground that such orders were discretionary, the court has expressly stated that, whatever might be the rule elsewhere, in this jurisdiction an order either denying or granting a motion for a new trial may be brought up on exceptions. See *George v. Holt,* 9 Haw. 135; *Republic v. Hapa,* 9 Haw. 622. (See also *Ah Chu v. Sung Kwong Wo Co.,* 5 Haw. 291). It is true that in these cases the court did not expressly say when the order or ruling might be brought up, that is, whether before or after final judgment, but there can be no doubt that it meant immediately; it of course meant that a ruling on a motion for a new trial could be made the direct and independent subject of a bill of exceptions; not merely that it could be considered on a review of the final judgment itself. These decisions were made about the same time as most of the decisions above referred to which held that other interlocutory rulings could not be brought up immediately on exceptions and the second of these decisions was made after most of those cases were decided. The statement made in some of those cases, to the effect that the fact that exceptions to such other interlocutory rulings had been entertained in some cases did not establish the right to bring such exceptions immediately, because the practice had generally been the other way and because when such exceptions had been

entertained it was by consent or because the point was not noticed, does not apply to rulings on motions for new trials; for, as stated in *George v. Holt,* the practice had been different in respect to exceptions to such rulings.    Instances of entertaining exceptions to orders granting new trials may be found in the same volume of the reports.    See *Kaanaana v. Keahi,* 9 Haw. 318; *Macfarlane v. Lowell,* 9 Haw. 438.    Of course in such cases where the ruling of the trial judge is not on a pure question of law considerable weight is given to his opinion, particularly if he grants a new trial.    The rule of the·court, which, as often stated in the decisions, was based on the statute in regard to motions for new trials, also shows unmistakably that it was regarded as correct practice to bring an order granting or refusing a new trial directly to this court on exceptions. Rule VIII, 5 Haw. iii.    See also Rule 15 of the circuit courts, 9 Haw. 718, adopted soon after the reorganization of the judiciary department.

In view of the foregoing we prefer not to pass upon the question whether an order granting a new trial may or may not be brought to this court immediately on exceptions, and it is unnecessary to do so, for, assuming that it cannot, it does not follow that it can be brought here immediately by writ of error.    The practice in regard to exceptions has been different from that in regard to error.    The statute in regard to exceptions is broader than that in regard to error.    Exceptions and error are inherently proceedings of different character.    On exceptions, various specific rulings, whether interlocutory or final, whether brought up immediately or only after final judgment, are made direct and independent subjects for review; only so much of the record is brought up as is necessary for passing upon the specific exceptions; the decision usually is that the exceptions be sustained or overruled and that such further proceedings be had as the rulings on the exceptions call for.    On error the final judgment alone is brought up, and specific rulings, whether excepted to or not, are considered only incidentally in passing upon the correctness of the final judgment; the entire record is brought up, and the judgment of the appellate court is such

as the facts and law warrant as shown by the entire case. Orders granting new trials are no doubt of an interlocutory nature and error in general lies only to review a final judgment, and we accordingly hold that ordinarily an order granting a new trial cannot be brought up immediately by writ of error. Perhaps this view is supported to some extent by analogy by the cases of *Est. of Banning,* 9 Haw. 357, and *Lyman v. Winter,* 15 Haw. 424, which were cases of appeals from a circuit judge sitting in probate and from a district magistrate respectively.

If, however, as contended by the plaintiff, the circuit court had no power to make the order granting a new trial when it was made, it was a final judgment. In such case the court, having no jurisdiction over the verdict already obtained, could not vacate it or set it aside for the purpose of a new trial upon the merits of the original action. The motion for a new trial would in such case have to be regarded as a new proceeding and the order granting a new trial would be the final order in that proceeding and therefore reviewable. *Hume v. Bowie,* 148 U. S. 245; *Macfarland v. Brown,* 187 U. S. 244; *Deering v. Creighton,* 26 Or. 556. The question, therefore, is whether the circuit court had jurisdiction of the motion for a new trial and power to grant the motion.

The defendants' failure to file the required bond within the ten days prescribed by the statute was fatal unless it was waived by the plaintiff. The defendants contend strenuously that since the bond is required by the statute to be conditioned that the defendant will not, to the detriment of the plaintiff, dispose of any property he may have liable to execution on "such judgment," it could not be filed and therefore was not required to be filed before the entry of judgment, which in this case, as shown above, occurred the eleventh day after the verdict, and that therefore the bond, which was filed on the day of entry of judgment, was filed in sufficient time. Of course the judge could not extend the time prescribed by the statute. See *Kapiolani Est. v. Peck,* 14 Haw. 580; *Kapiolani Est. v. Thurston,* 16 Haw. 147. The question is solely, what did the statute require? This provided, Revised Laws, Sec. 1805, since

amended, that "any party against whom a verdict or judgment is rendered, as set forth in the last preceding section, may, upon filing a sufficient bond of security, conditioned," etc., "and upon giving notice of said motion and the grounds thereof to the opposite party, move the court at any time within ten days after rendition of verdict or judgment, for a new trial, for any cause for which by law a new trial may and ought to be granted." The preceding section, since amended, provided that "judgment shall be entered by the clerk, without motion, immediately upon the rendition of a verdict, or of a judgment of the court, or of a judge at chambers, and execution may issue thereon at any time thereafter, when called for, unless notice is given at the time of rendering the verdict, or judgment, of a motion for a new trial and the filing of a bill of exceptions and bond, as provided by statute, within ten days after the rendition of such verdict or judgment." There are several possible constructions of the words "such judgment" in section 1805. For instance, these words may have been used in a broad sense to denote a verdict as well as a judgment, for the words "verdict or judgment" previously used in this section are used "as set forth in the last preceding section," in which the word "judgment" is used not in the sense of a judgment entered on a verdict but in the sense of a judgment by the court in the nature of a verdict, as in a jury waived case, and in both sections the verdict and judgment are expressed to be those rendered, not those entered. Or, if such words are not used in that sense, but in the sense of a judgment rendered as distinguished from entered upon a verdict, they may refer to the judgment rendered in contemplation of law, which is the only judgment that is usually rendered on a verdict in a civil case in this Territory, for seldom if ever does the court formally render a judgment upon a verdict in this jurisdiction. Again, if these words refer to the judgment entered as distinguished from the judgment rendered, they may mean the judgment entered in contemplation of law, that is, as required by section 1804, and perhaps presumed in law to have been entered whether entered in fact or not. See *Rose v. Smith,* 5 Haw. 377, 380. As matter of fact the judg-

ment in this case was entered nunc pro tunc. Or, these words might refer to such judgment as may be entered. We believe that usually judgment is not entered pending a motion for a new trial, and that in such cases the bond is usually or often conditioned against the disposal of property liable to execution on such judgment as may be entered upon the verdict. Whatever the true construction, it is obvious that construing the section as a whole and in connection with the preceding section, the motion must be presented within ten days after verdict and the bond must be filed at least within the same time, for the motion cannot be made except upon filing the bond and there was certainly no intention that a motion for a new trial could be made or perfected by filing a bond and paying costs at any time after formal entry of judgment however long that might be after verdict. Even if judgment had to be entered before the bond could be filed, it would be the duty of the movant to see that it was entered within the ten days or forfeit his right to move for a new trial. That the bond must be filed within ten days after verdict is established by former practice and decisions. See *Joliva v. Kaulukou*, 7 Haw. 731; *Gonsalves v. Brito*, 8 Haw. 254; *Ferreira v. Honolulu R. T. & L. Co.*, 16 Haw. 797; see also *Briggs v. Mills*, 4 Haw. 450; *Napahoa v. Chinese Union*, 7 Haw. 379. This is also the construction placed upon the statute by the rules of court above referred to. Indeed, the question has not been whether judgment had to be entered before the bond was filed or whether the motion could be made or bond filed after entry of judgment, even though more than ten days after verdict, but whether judgment could properly be entered at all after the filing of the motion and before its disposition, or whether if entered immediately after verdict but before the filing of a motion for a new trial it was not vacated by the filing of the motion. See *Herblay v. Norris*, 9 Haw. 121; *Byrne v. Allen*, 10 Haw. 327; *Kukea v. Keahi*, 10 Haw. 505.

The question then is whether the failure to file a bond within the required time could be waived and if so whether it was waived. Many courts hold that although formal or technical

defects in bonds of this nature may be waived, substantial
defects, such as the want of a surety on the bond and, a fortiori,
the failure to file any bond within the required time, cannot be
waived either by implication, as by entering a general appear-
ance or joining in error or submission on the merits, or by an
express waiver, whether oral or in writing,—the argument being
that the requirement of a bond is not wholly for the benefit of
the adverse party but partly for the purpose of discouraging
frivolous and vexatious litigation as a matter of public policy,
and that jurisdiction being conditioned upon compliance with
the statutory requirements cannot be conferred by consent.
*Ten Brook v. Maxwell,* 5 Ind. App. 353; *Lyell v. Guadaloupe,*
28 Tex. 57; *Santom v. Ballard,* 133 Mass. 465; *Henderson v.*
*Benson,* 141 Mass. 218; *Marx v. Lewis,* 24 Nev. 306 (53 Pac.
600); *Cape Fear, etc., Co. v. Coston,* 63 N. C. 264. Probably,
however, no court would hold that the objection of the want of a
bond would be good if made for the first time after decision of
the motion for a new trial or appeal as the case might be. In
this jurisdiction, it was held in *Paakuku v. Komoikehuehu,*
3 Haw. 642, that appellee's counsel could not by stipulation in
writing waive a failure to file the appeal bond within the time
prescribed by statute, but in *Coleman v. Coleman,* 5 Haw. 300,
in which appellee's counsel expressly withdrew an objection
previously made on the ground that the costs had not been paid
within the prescribed time, the court, in passing upon the con-
tention made after the decision on appeal that the decision was
void for want of jurisdiction, held that the objection of non-
payment of costs had been waived and expressly overruled the
*Paakuku* case in so far as it held that such an irregularity could
not be waived by counsel, but stated also that it was distin-
guishable inasmuch as the question of want of jurisdiction had
been raised in it, but had not been raised in the case then before
the court, prior to the decision. The *Coleman* case has been
considered as establishing the proposition in this jurisdiction
that defects of the kind now in question may be waived by
counsel and are waived by express stipulation to that effect
prior to the expiration of the time prescribed by statute or by

failure to raise the question at all until after decision. See *Spooner v. Rice,* 11 Haw. 429; *Est. of Kamakala,* 12 Haw. 264; *Hind v. Wilder Steamship Company,* 14 Haw. 219.

If there was a waiver in the present case it was by implication. What is sufficient to show such a waiver? A waiver partakes to some extent of the nature of an estoppel. It is sometimes called a quasi-estoppel. In general, unless it is express, it is shown either by such laches or by such inconsistent action as shows an intention not to rely upon the objection. For instance, moving for or consenting to repeated continuances after opportunity to raise the objection might be regarded as sufficient laches, and joining in error or submitting or agreeing to submit the matter upon its merits might be sufficient action of an inconsistent character. But what were the facts here? There is nothing but the affidavit of defendants' counsel to show what was done by plaintiff's counsel before he raised the objection. It does not appear upon what Judge Lindsay based his opinion. Even if he found that there had been a waiver, he was in no better position than this court is to pass upon this question, for he had nothing before him but the affidavit referred to. There was nothing in the affidavit of which Judge Gear did not have as full knowledge and notice as the affiant. No counter affidavit was necessary. And yet Judge Gear did not find that there was a waiver but entertained jurisdiction upon the express ground, which we have held unsustainable, that the bond was filed in proper time. From his knowledge of the facts or his construction of the affidavit in the light of the facts as he knew them, he may have been of the opinion that there was no waiver. But let us assume that he did not so find, and take the affidavit at its face value.

The affidavit was apparently drawn with care with a view to making out as strong a case for the movant as the facts would warrant. It is not pretended that it shows laches. It can be relied on, if at all, only as showing inconsistent action, that is, that the plaintiff's counsel consented to a hearing of the motion on its merits and thereby waived the right to take the inconsistent position of contending that it was not properly before

the court. But it is at best ambiguous, in so far as it is intended to show that plaintiff's counsel consented to an argument of the motion upon the merits. The material part for present purposes is as follows: "That said motion (for a new trial, filed May 31) was set for argument on Friday, June 3rd last, being the eighth day after said verdict was rendered; that at the time set for argument of said motion defendants' counsel appeared, but plaintiff's counsel sent word to the court that he was not ready, being otherwise engaged; whereupon argument on said motion was postponed at the request of plaintiff's attorney until this Tuesday, June 7th, at which plaintiff's attorney moved that defendants' motion be dismissed for failure to file a bond as above mentioned, having given no intimation previously of his intention so to do. Wherefore this affiant respectfully submits that he waived the same." This shows merely that plaintiff's counsel sent word to the court that he was not ready and requested a continuance because he was otherwise engaged. It is doubtful whether the date, June 7, was set by the court of its own motion or on the suggestion of defendants' counsel or at the request of plaintiff's counsel, that is, whether the postponement alone was at such request or the postponement to the particular day. It is at least still more doubtful whether plaintiff's counsel intended to agree to argue the motion upon its merits. We say "at least" because it seems so clear as to be hardly doubtful at all that no such consent was intended. The only possible contention for the defendants is that the plaintiff's counsel requested that argument on the merits of the motion should be continued, and that contention must be based solely upon an extremely ambiguous clause,—which should be construed most strongly against the defendants, particularly when they seek to show a waiver. Nothing was said of the merits of the motion. It would be most natural for plaintiff's counsel to request merely that the hearing of the matter should be postponed and that is the most natural construction to place upon the clause in question. Moreover, the word "argument" in that clause would naturally have the same meaning as the same word in the preceding clauses of the portion of the affidavit above quoted, where it can.

mean nothing else than a hearing upon any questions that might properly arise upon the presentation of the motion. There is nothing whatever to indicate that either plaintiff's or defendants' counsel or the court made any allusion to the merits of the case or that there was any intention on the part of plaintiff's counsel to agree to argue the motion on its merits. The alleged setting of the argument for June 3 consisted merely of the usual notice given by the movant's counsel that the motion would be presented for argument on that date or as soon thereafter as counsel might be heard. It was not for counsel on one side to confine the argument to the merits of the motion. There was no duty on the part of plaintiff's counsel to point out failures on the part of the defendants before the expiration of the time prescribed by statute for perfecting the motion. It does not appear that plaintiff's counsel knew on June 3 that no bond had been filed. He did not even appear and object to the motion on other grounds. He merely sent word that he could not appear at all at that time, and asked that the matter be postponed for that reason. A waiver is a matter of intention shown expressly or by implication, as by laches or inconsistent conduct. No such intention appears here. It is obvious that the request for postponement was for a different purpose and was not inconsistent with an intention to make any available objections to the motion. Indeed, if the plaintiff waived its objection of no bond merely because it did not raise it on June 3 when it did not attend at all, there would seem to be even greater reason for holding that the defendants waived their objection of plaintiff's laches or inconsistent conduct, for they did not raise that until after they had argued the question of no bond on its merits and after they had moved for an extension of time in which to file a bond. It is unnecessary to say whether the attorney general could waive a right of the Territory of this kind. See *Peacock v. Republic,* 11 Haw. 404.

In *Little v. Jack,* 68 Cal. 343, it was held that an appellee did not waive the right to a dismissal of an appeal for want of an appeal bond by stipulating to advance the appeal on the calendar for hearing. The court said: "There has been no such

waiver in this case, unless the stipulation to have the case placed on the calendar out of its order for hearing constituted it. There is no allusion in the stipulation to the undertaking, and nothing to indicate an intention to waive it. By no rule of construction could it be held to be·a written consent of respondent to waive the filing of an undertaking." In a concurring opinion it was said: "It does not appear that the respondent's counsel, when he signed the stipulation, contemplated giving such consent. The stipulation above mentioned was signed with another and different object and intent, and to predicate of it that it consented that no undertaking on appeal should be filed would be to attribute to it an intent entirely foreign to the intent for which the stipulation was entered into, and which was in the minds of the parties when it was executed. Where an intent plainly appears, another and a different one cannot be implied." In *Howard v. Malsch,* 52 Tex. 60, an appeal having been taken but the transcript not having been filed, the appellees moved for affirmance, which was denied. The appellants moved for leave to file the transcript. Appellees appeared and resisted the motion but the court allowed the transcript to be filed. Subsequently the cause was continued by consent, which was made known on the part of the appellees through resident counsel on behalf of absent counsel. It was held that there was no waiver of even formal objections to the bond. See also *James v. Dexter,* 112 Ill. 489, and *Bubb v. Cain,* 37 Kan. 692 (16 Pac. 89). Of the four cases cited contra, three, namely, *Ives v. Finch,* 22 Conn. 101, *Cason v. Laney,* 82 Tex. 317, and *Vernia v. Lawson,* 54 Ind. 485, are so obviously distinguishable from the present case as to require no comment. The remaining case, *Farnam v. Davis,* 32 N. H. 302, was an appeal from a justice of the peace which was entered at the October term, 1853, of the appellate court, at which term the plaintiff entered his appearance as appellee and the cause was continued. He did not move to dismiss the appeal for want of a sufficient bond until the March term, 1854. There was not a total absence of a bond, but the bond had only one surety instead of two, which were held necessary under a law which "required sufficient sureties." It

was held that this was an irregularity which could be waived, and which was waived, the court saying, among other things, "the irregularity, then, is one which may be waived by the appellee; and we think he is to be considered as having waived it, when, having had reasonable opportunity to avail himself of the objection by a motion to dismiss the appeal for that cause, he neglects to do so. The requirements of the statute for his benefit can be dispensed with only by his consent; but it cannot be considered unreasonable to him and it certainly is but just to the appellant, to hold that that consent is to be understood as given when he enters his appearance at the appellate court, and suffers a continuance of the cause, without a suggestion that his rights have been disregarded in the mode of taking the appeal." This case, while it goes further than any other case that has come to our notice, does not go as far as the defendants ask us to go in the present case.

In view of the foregoing it will be unnecessary to decide whether Judge Gear's order for a new trial by cable or subsequently by mail, was void upon the ground that it was made in California and outside of his jurisdiction, or on the ground that the mailed decision was made after the expiration of his term of office.

The motion to quash or dismiss is denied.

*E. C. Peters, Attorney General,* and *F. W. Milverton, Deputy Attorney General,* for the Territory.

*S. H. Derby (Kinney, McClanahan & Cooper* on the brief), for the defendants on the writ of error.